GIDEON et al. v. HINDS, NOBLE & ELDREDGE et al.

(Supreme Court, Appellate Division, First Department. May 5, 1916.)

1. LIMITATION OF ACTIONS 165—EFFECT OF BAR—CONSTRUCTION OF AGREEMENT.

Parties against whose action to reform a written agreement the statute of limitation has run cannot, under the guise of having the instrument construed and setting forth its real intent and purpose, secure a substantial reformation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 649; Dec. Dig. 165.]

2. EVIDENCE 441(1)—PAROL—EXPLANATION OF CONTRACT—GROUND FOR ADMISSION.

Where a contract of incorporators, providing for transfer of certain shares of stock to the corporation, was clear and certain parol evidence was not admissible to explain or interpret it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1756, 1757, 2030; Dec. Dig. 441(1).]

3. EVIDENCE 441(1)—PAROL—INTENTION OF PARTIES—CONTRACTS—CONSIDERATION.

Where the contract of the incorporators for the assignment of certain shares of stock to be held in escrow by the corporation was, in effect, a gift of the stock to the corporation, to be later divided as the majority holders might direct, they could not show that it was intended that certain persons should then have a majority of the stock, and so defeat the express wording of the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1756, 1757, 2030; Dec. Dig. 441(1).]

Appeal from Special Term, New York County.

Action by George D. Gideon and another against Hinds, Noble & Eldredge and others. From a judgment dismissing the complaint and

from intermediate orders sustaining demurrers thereto, plaintiffs appeal.  Affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, and DAVIS, JJ.

Frederick T. Kelsey, of New York City, for appellants.

Edward F. Clark and Roger Hinds, both of New York City, for respondents.

DOWLING, J.   The question involved in this appeal is the sufficiency of the amended and proposed reamended complaints, permission to serve the latter having been granted after the demurrer to the amended complaint had been sustained, provided it showed a meritorious cause of action, which it was held it did not set forth, and leave to serve it was therefore denied.   The action is brought by two stockholders of the defendant corporation, Hinds, Noble & Eldredge, for a determination of the rights of the parties to the action in $25,000 worth of stock in said corporation, and for an injunction restraining the transfer thereof by said corporation, or the making of any agreement to sell the same.   The proposed reamended complaint sets forth the alleged facts in the most favorable light to plaintiffs, substantially as follows: In the early part of the year 1904 plaintiff Noble and defendant Hinds were engaged in business under the firm name of Hinds & Noble, as book publishers and sellers in the city of New York; Eldredge & Bro., a New Jersey corporation, was engaged in a similar business in the city of Philadelphia, its capital stock being owned and controlled by plaintiff Gideon and defendant Eldredge, the latter of whom had agreed to sell all of its capital stock to the former, who had paid part of the purchase price.   It having been concluded to consolidate the corporation of Eldredge & Bro. with Hinds & Noble, an agreement was made in writing by Hinds, Noble, Gideon, Eldredge, and Eldredge & Bro., whereby the business theretofore conducted by Hinds & Noble (excepting the branch thereof wherein they dealt in miscellaneous school books and secondhand books) and the business of Eldredge & Bro. were to be consolidated and conducted as one enterprise by either the corporation of Eldredge & Bro., or a new corporation to be organized under the laws of the state of New York and known as Hinds, Noble & Eldredge, as a majority of the parties thereto might agree.   In either event the capital stock of the new business was to be $300,000, whereof Hinds & Noble were to receive each the amount of $93,750 (in all $187,500) in exchange for their business as transferred and for the payment of $5,250 in cash.   For the business of Eldredge & Bro. and a payment of $3,000 in cash there was to be issued the remaining $112,500 of new stock, whereof the amount of $91,250 was to be issued to Eldredge and the remainder of $21,250 to Gideon.   Then follows the clause which is the basis of the present controversy:

"The said Hinds, Noble, Eldredge and Gideon each hereby agrees that upon receipt of the foregoing mentioned stock he will indorse in blank a certificate representing six thousand, two hundred and fifty dollars ($6,250) of such stock, and deposit the same in escrow with the corporation conducting the consolidated business, for a period of three years, at the end of which time the aggregate

of such stock, to wit: twenty-five thousand dollars ($25,000) shall be divided and transferred to such parties and in such amounts as shall be decided upon by those holding majority of stock of said company."

It was further agreed that Hinds, Noble, and Gideon should immediately purchase $10,000 of Eldredge's stock, and the new corporation should purchase, out of its surplus earnings, 10 shares of Eldredge's stock annually at par, and as many more of his shares as the board of directors might decide, until it had bought from him stock to the amount of $55,000 par value. Certain provisions then followed as to the division of the net profits, the declaration of dividends, options of purchase of certain stock, prohibiting the sale of new stock for a certain number of years except an amount of $10,000 for disposal to teachers and influential parties, payment of annual salaries to Eldredge, Gideon, Hinds, and Noble, and other details, none of which is material to the present controversy. The proposed complaint then sets forth that a new corporation, as provided for, was organized, known as Hinds, Noble & Eldredge and the $300,000 of capital stock was divided among the parties as agreed; that in order to effectuate the provisions and intent of the paragraph of the agreement heretofore quoted, Hinds indorsed in blank a certificate for $6,300 par value of such stock, Noble one for $6,200, Eldredge one for $6,300, and Gideon one for $6,200, and that the four certificates were deposited—

"in four sealed envelopes and delivered to the defendant corporation of Hinds, Noble & Eldredge to hold in escrow pursuant to the terms and provisions of the section of paragraph third of said agreement of March 9, 1904, hereinbefore quoted, and was accepted by said corporation to be held in escrow pursuant to the terms and provisions of said agreement."

Plaintiffs pleaded the state of the stock holdings in the corporation before and after said deposit. They then allege the intent and purpose of the parties to the agreement, in providing for a deposit of $25,000 of stock in escrow, and in making the deposit, which they claim, in brief, was that, as Gideon and Eldredge demanded more stock for the Eldredge & Bro. assets and business than Hinds and Noble were willing to allow, a compromise was made by which the ultimate disposition of the $25,000 in stock was to be left to Noble & Hinds—

"who should at the expiration of the three-year period of deposit, fairly and equitably allot such portion of said par value stock to plaintiff Gideon and defendant Eldredge as, in the judgment of said Hinds & Noble, the value of the assets and business of said Eldredge & Bro. might, at the expiration of said three-year period, warrant, returning to themselves, to wit, Messrs. Hinds and Noble, such portion, if any, of the said stock as was not required by such fair and equitable allotment; that in providing for the disposition of the said escrow stock, at the end of the said three-year period of deposit, by those holding a 'majority of the stock' of the corporation, all the parties to the said agreement of March 9, 1904, intended, and had in mind, that plaintiff Noble and defendant Hinds would, at the expiration of the said three-year period, be those holding the control and the 'majority of the stock' of the corporation, and that they, as such majority holders, would, and should, then dispose of the said escrow stock in the manner aforesaid, and that said stock should not be disposed of by any stockholders, or combination of stockholders, other than said Hinds & Noble, even though stockholders might also together own a majority of the stock of the corporation; that all parties to the said agreement of March 9, 1904, intended that the said escrow stock should be divided by Messrs. Hinds and Noble, and by no one else; and that the phrase 'those

holding majority of stock,' used in the said agreement, was intended by all the said parties to mean, and refer to, Messrs. Hinds and Noble, as such majority stockholders, and not to any other combination of stock interest which might, at the expiration of said three-year period, or any other time, also constitute a stock majority."

It is then alleged that when the three-year period expired (on March 9, 1907), no disposition or division of the stock in question was made, or attempted to be made, nor was any division thereof attempted until January 12, 1915, when the board of directors of Hinds, Noble & Eldredge passed resolutions, directing that the $25,000 of stock—

"be transferred on the books of the corporation from the names of the four individuals to that of the corporation itself, in its own right, as treasury stock, and that it thereafter be offered for sale to certain named individuals friendly to the interests of defendant Hinds and defendant Eldredge; and that thereupon $2,500 par value of said escrow stock was immediately sold, or purported to be sold, by the corporation to the aforesaid individuals, and transferred upon the books of the corporation to their names, and the balance of said $25,000 par value stock, to wit, $22,500, was paid in the name of the corporation itself."

There are then allegations tending to show that the four persons to whom the stock was sold are friendly to the interests of Hinds and Eldredge, and that they will not be required to pay the notes they have given for their stock, and plaintiffs give their views as to the reason for, and object of, the action taken by the board. There is an allegation that the stock in question has always been treated and considered by Gideon, Noble, Hinds, and Eldredge—

"as their individual property, subject only to a possible division thereof at any time after March 9, 1907, by Messrs. Hinds and Noble in accordance with the intent of said agreement of March 9, 1904, under which it was deposited with the corporation, but subject to no other disposition, except a return of it to the said four individuals as its owners, without the unanimous consent or approval of all four of the said individuals. That never, during the said period was the said stock, or any part thereof, transferred, or intended by any one to be transferred, to the corporation of Hinds, Noble & Eldredge, or to any other person or corporation."

There is a further allegation that the stock of Hinds, Noble & Eldredge cannot be purchased upon the open market, has no market value, and is closely held by a few stockholders; that plaintiffs cannot purchase stock in place of the escrow stock, and the threatened sale thereof will work incalculable injury to plaintiffs in securing Hinds and Eldredge in their control of the corporation and preventing plaintiffs from regaining control thereof, and that plaintiffs have no adequate protection at law.

[1, 2] We agree with the learned court at Special Term that neither of these complaints states a good cause of action. Under the guise of setting forth the real intent and purpose of the parties to the agreement, plaintiffs are really seeking to reform their written agreement, under seal. Against an action brought directly to secure such a reformation the statute of limitation has run. The agreement itself is, in our opinion, clear and unambiguous, and neither requires nor permits parol evidence to explain or interpret it. The four individuals in question parted with their respective quotas of the $25,000 in stock un-

der an agreement by which it was deposited with the corporation to be by it divided and transferred to such parties and in such amounts as should be decided upon by those holding a majority of its stock. The deposit was to be for a period of three years, at the end of which time the division should be made. This amounted to no more than a prohibition of division of the stock for three years, and is in harmony with the prohibition against the sale of any of the new stock by any of the parties within three years save by unanimous consent of the board of directors (with certain exceptions), as set forth in paragraph seventh of the agreement. Plaintiffs do not claim that they ever sought to terminate the deposit, or to withdraw their stock, or to revoke the escrow agreement. Nor does it appear that they could have done so even if they had attempted it, for under the agreement they had absolutely parted with their interests in their stock, and had put it beyond the power of recall. They reserved no rights of any kind in the stock they voluntarily transferred, and when the corporation sold or transferred it, no part of the purchase price therefor was to be paid over to plaintiffs. In effect the four individuals made a gift of $25,000 in stock to the treasury of the corporation, to be disposed of as those in control of its stock after the expiration of three years might determine. If plaintiffs objected to the delay in its distribution, they should have taken steps to enforce earlier action. Their pleadings showed upon their face that the stock remained throughout in the possession of the corporation until its final disposition, and that such disposition was authorized, empowered, and dictated by those then owning a majority of the capital stock of the corporation.

[3] Nor can any ingenious combinations of the stock holdings of the individuals, arranged so as to show the possible variations of control by individuals, alter the clear language of the agreement, under which the ultimate division of the stock was to be determined by those in control of the majority of the stock at the time of distribution. Their complaints show no time after the making of the agreement when Hinds and Eldredge were not holders of a majority of the stock. If the intention was as plaintiffs now claim, that Hinds and Noble should divide the stock at the end of three years, why did not the instrument so provide? The agreement between the parties was clear and explicit. Upon the faith of it, the consolidation of the respective business interests of the firm and the corporation was had. It is too late, years afterwards, when a new alignment of the individual holders of the stock has taken place, to seek to reform the instrument under the guise of ascertaining the real intent of the parties and to import into it provisions which are repugnant to its express terms, thus changing and varying its effect without any claim of fraud or mistake in its execution.

The judgment and orders appealed from are affirmed, with costs to respondents. Order filed. All concur.